# EXHIBIT 1

**FLITTER MILZ, P.C.**
CARY L. FLITTER (ID No. 35047)
ANDREW M. MILZ (ID No. 207715)
JODY T. LÓPEZ-JACOBS (ID No. 320522)
450 N. NARBERTH AVENUE
SUITE 101
NARBERTH, PA 19072
(610) 822-0782

ATTORNEYS FOR PLAINTIFF

MAJOR NON-JURY

| | |
|---|---|
| ROSE PINTO,<br><br>                    Plaintiff,<br><br>    vs.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY; and ST. PAUL INSURANCE COMPANY, INC.,<br><br>                    Defendants. | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>CIVIL ACTION<br><br>                    TERM, 2022<br><br>NO. |

## <u>COMPLAINT</u>

### INTRODUCTION

1.     Plaintiff Rose Pinto is looking for Defendant insurance carriers to make good on remaining payments due under a structured settlement.  The payments are due under a *Settlement Agreement and Release* which is attached at Exhibit A.

2.     Rose Pinto was seriously injured in a car wreck in New Jersey in 1981. She was 23 years old at the time of her injuries. St. Paul provided the liability policy for the defendants who caused her injuries. The case was settled by St. Paul in 1984 on behalf of the defendants. The structured settlement required St. Paul to pay lump sum payments and monthly payments to Ms. Pinto for some 45 years until approximately August 31, 2034. St. Paul first breached the *Settlement Agreement and Release* by failing to make the full, periodic payment due August, 2013.

1

## PARTIES, JURISDICTION AND VENUE

3.     Plaintiff Rose Pinto is a citizen of the Commonwealth of Pennsylvania.

4.     The Defendants St. Paul Fire and Marine Insurance Company and St. Paul Insurance Company, Inc. are herein collectively referred to as "St. Paul." These companies have their home office located at One Tower Square, Hartford, Connecticut 06183.

5.     St. Paul is registered to do business as an insurance company in the Commonwealth of Pennsylvania. St. Paul was so registered at all times relevant.

6.     St. Paul regularly does substantial business in Philadelphia, where it has written scores of insurance policies. St. Paul has written hundreds of insurance policies for businesses and consumers residing in Philadelphia and elsewhere in Pennsylvania. Defendants are subject to the jurisdiction and of this Court and the venue is proper here.

## GENERAL ALLEGATIONS

7.     Rose Pinto filed an action for damages against Robert Callahan, John Callahan, Bruce Claypool and The Library, Inc. relating to the 1981 car wreck.

8.     St. Paul provided underlying liability coverage for the defendants in the lawsuit. St. Paul resolved Ms. Pinto's claims against its insured by entering into the *Settlement Agreement and Release*, signed by Ms. Pinto, under seal, in the Commonwealth of Pennsylvania on August 3, 1984.

9.     St. Paul Insurance Company, Inc. is identified as the corporate entity within the body of the contract. The *Settlement Agreement and Release* is signed by a corporate representative of St. Paul Fire and Marine Insurance Company, under seal, on September 13, 1984.

10.     On the application for an annuity to fund its settlement with Rose Pinto, Defendant St. Paul Insurance Company is identified as the designated annuity owner.

2

11.     To this day, Ms. Pinto remains permanently impaired from cranial, facial, and bodily injuries sustained in the wreck. Her injuries at the time of the wreck resulted in nearly two months in a coma and multiple facial fractures resulting in a permanent right-sided third nerve palsy which is present today. She suffered multiple fractures to the right shoulder, ribs, right femur, and right lower leg. Her lower extremities are pinned orthopedically and cause chronic arthritic pain. She has a permanent limp with continued restricted use of her right leg and right shoulder. She underwent extensive rehabilitation and lost substantial time from school and work as a result of the injuries.

12.     The *Settlement Agreement and Release* obligated St. Paul to make annual and monthly payments to Ms. Pinto as follows:

   A.)     A lump sum payment of $204,000.00 to be paid on or before August 31, 1984.

   B.)     Further lump sum payments:

| | | |
|---|---|---|
| 1. | on or before 7/31/89 | $ 50,000 |
| 2. | on or before 7/31/94 | $ 100,000 |
| 3. | on or before 7/31/99 | $ 200,000 |
| 4. | on or before 7/31/04 | $ 400,000 |
| 5. | on or before 7/31/09 | $ 500,000 |
| 6. | on or before 7/31/14 | $ 600,000 |
| 7. | on or before 7/31/19 | $ 750,000 |
| 8. | on or before 7/31/24 | $ 1,000,000 |
| 9. | on or before 7/31/29 | $ 1,000,000 |

   C.)     Monthly payments as follows:
             $ 2,000 per month for sixty months beginning on or before 8/31/84
             $ 3,000 per month for sixty months beginning on or before 8/31/89
             $ 3,500 per month for sixty months beginning on or before 8/31/94
             $ 4,000 per month for sixty months beginning on or before 8/31/99
             $ 5,000 per month for sixty months beginning on or before 8/31/04
             $ 6,000 per month for sixty months beginning on or before 8/31/09
             $ 7,000 per month for sixty months beginning on or before 8/31/14
             $ 9,000 per month for sixty months beginning on or before 8/31/19
             $12,000 per month for sixty months beginning on or before 8/31/24
             $15,000 per month for sixty months beginning on or before 8/31/29

Exhibit A, pp. 1-2.

3

13.     Each payment was to be delivered to Ms. Pinto at her home in Pennsylvania.

14.     As of July, 2013, the monthly obligation was $6,000.00. All payments due Ms. Pinto under her *Settlement Agreement and Release* with St. Paul were paid as contracted through July, 2013, and were delivered to Ms. Pinto at her home in Pennsylvania.

15.     St. Paul sought to fund its liability to Ms. Pinto by purchasing an annuity from Executive Life Insurance Company of New York, with St. Paul as the owner of the annuity and Ms. Pinto as the annuitant.

16.     At the time of purchase of the annuity, Executive Life Insurance Company of New York was aggressively marketing annuities at very competitive prices that it funded by purchasing the high-risk junk bonds marketed by Michael Milken of the now defunct Drexel, Burnham, Lambert.

17.     In due course, the market value of the junk bonds purchased by Executive Life Insurance Company of New York collapsed, Drexel, Burnham, Lambert became insolvent and Mr. Milken was sentenced to jail.

18.     Executive Life Insurance Company of New York subsequently became insolvent and was placed under receivership by the State of New York.

19.     The obligations of Executive Life Insurance Company of New York to St. Paul and to Ms. Pinto under its annuity contract with St. Paul have been managed by the Guaranty Association Benefits Company since 2013, and the annuity payments made thereunder have, since August, 2013, been reduced by 55.26%.

20.     The failure of the Executive Life Insurance Company of New York to remit the full amount of the periodic payments contemplated by the *Settlement Agreement and Release* to Ms. Pinto under its annuity contract with St. Paul in no way impacts the legal obligations of St. Paul to Ms. Pinto under the *Settlement Agreement and Release*.

Case ID: 220901652

21.     The *Settlement Agreement and Release* is the *only* contract between Ms. Pinto and St. Paul.

22.     The *Settlement Agreement and Release* further provides:

> All payments to be made pursuant to the provisions of this agreement are guaranteed and not dependent upon survival of Rose Pinto and remain the obligation of St. Paul Insurance Company, Inc. ...

Exhibit A, p. 2.

23.     The *Settlement Agreement and Release* further provides:

> St. Paul Insurance Company, Inc. shall at all times remain directly responsible for all sums and obligations contained in this agreement except as may otherwise be provided herein and may, for its own convenience, fund its obligation to make said payments under the terms of this agreement through the purchase of a financial vehicle including but not limited to an annuity policy from Executive Life Insurance Company of New York.

Ex. A, p. 2.

24.     The *Settlement Agreement and Release* provides:

> Payments made pursuant to said annuity contract shall operate as a pro tanto discharge of the scheduled obligations set forth herein. For its own convenience, St. Paul Insurance Company, Inc. shall have the annuity carrier mail payments directly to the plaintiff.

Ex. A, p. 2.

25.     The *Settlement Agreement and Release* provides that the annuity contract or other funding vehicle chosen by St. Paul: "is being held by St. Paul Insurance Company, Inc. as owner, subject to St. Paul Insurance Company, Inc.'s obligation to ensure said payment to Rose Pinto pursuant to the terms of this agreement." Exhibit A, p. 2.

26.     St. Paul for its convenience purchased an annuity from Executive Life Insurance Company of New York. Ms. Pinto was not a party to the application for the annuity.

27.     The *Settlement Agreement and Release* contains an incomplete provision concerning a possible future qualified assignment of Saint Paul's future obligations "pursuant to an agreement

5

in the sample form attached hereto as Exhibit A." Exhibit A, p. 3.

28.     No "exhibit A" was attached to the *Settlement Agreement and Release* signed by Ms. Pinto.

29.     The provisions of the *Settlement Agreement and Release* regarding a possible future assignment are incomplete, severable and unenforceable.

30.     St. Paul remains contractually obligated to Ms. Pinto to make all unpaid or underpaid payments that it obligated itself to pay in the *Settlement Agreement and Release*.

31.     The successor to Executive Life Insurance Company of New York is the Guaranteed Association Benefits Company that was established in the course of liquidation proceedings by the insurance regulators of the State of New York.

32.     Each month that St. Paul fails to pay Ms. Pinto the difference between what St. Paul promised to pay her in the *Settlement Agreement and Release* and the amount of the monthly payments she receives from Guaranty Association Benefits Company is a separate and independent breach of St. Paul's contractual obligations to Ms. Pinto.

33.     The contract between Rose Pinto and St. Paul entitled *Settlement Agreement and Release* became binding September 13, 1984. Thereafter, St. Paul was obligated to abide by the terms of the contract and make or cause to be made the annual and monthly payments to Rose Pinto.

34.     St. Paul never attempted to assign its obligations to make the periodic payments to Ms. Pinto once its obligations had arisen under the *Settlement Agreement and Release*.

35.     St. Paul never made a valid qualified assignment of its duties and obligations to Ms. Pinto.

36.     A purported delegation of one's duties delegates only duties that then exist.

37.     There was never a release of St. Paul's periodic payment obligations to Ms. Pinto flowing from the *Settlement Agreement and Release* it executed on September 13, 1984.

6

38.     St. Paul has separately breached its contract with Rose Pinto each month that Rose Pinto has received less than the full annual and monthly payments St. Paul agreed to pay her in the *Settlement Agreement and Release*.

39.     Rose Pinto has suffered damages as a result of the monthly breaches of St. Paul's contract with Ms. Pinto.

40.     As of July, 2022, St. Paul was in arrears in payment obligations to Ms. Pinto in the amount of $1,196,931.60.

41.     Ms. Pinto has, at all times, performed all of her contractual obligations under the terms of the *Settlement Agreement and Release*.

42.     Ms. Pinto is entitled to recover from the Defendants the sum of $1,196,931.60, together with prejudgment interest.

        WHEREFORE, the Plaintiff prays for judgment in her favor:

        a) for the difference between the benefits she has received and the benefits agreed to and promised by St. Paul in the *Settlement Agreement and Release* through July, 2022.

        b) for prejudgment interest and counsel fees as provided by law;

        c) for such other and further relief as the Court may deem just and proper.

                                Respectfully submitted,


Date:  9/19/2022                */s/ Cary L. Flitter*
                                Cary L. Flitter
                                Andrew M. Milz
                                FLITTER MILZ, P.C.
                                450 N. Narberth Ave
                                Narberth, PA 19072
                                Phone: 610-822-0782
                                Fax: 610-667-0552
                                cflitter@consumerslaw.com
                                amilz@consumerslaw.com

                                7

John C. Bell, Jr. (*pro hac vice* forthcoming)
Pamela S. James (*pro  hac vice* forthcoming)
THE BELL FIRM
PO Box 1547
457 Greene Street (30901)
Augusta, GA  30903-1547
Phone: 706-722-2014
Fax: 706-722-7552
john@bellfirm.net
pam@bellfirm.net

Edward S. Stone (*pro hac vice* forthcoming)
EDWARD STONE LAW P.C.
275 West Putnam Avenue, 2nd Floor
Greenwich, CT 06830
Phone: 203-504-8425
Fax: 203-348-8477
eddie@edwardstonelaw.com

COUNSEL FOR PLAINTIFF

8

Case ID: 220901652

## **VERIFICATION**

I, ROSE PINTO, do hereby state that the statements contained in the Complaint are true and correct to the best of my knowledge, information, and belief. If any statement herein is false, I am subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

DATE: 8/25/2022

ROSE PINTO

9

Case ID: 220901652

# EXHIBIT "A"

Case ID: 220901652

## SETTLEMENT AGREEMENT AND RELEASE

IN CONSIDERATION of the undertakings and payments to ROSE PINTO of the sum of money set forth below, she does hereby forever release and discharge Robert Callahan, John A. Callahan, Bruce Claypool, Inc., t/a The Library, St. St. Paul Insurance Company, Inc., and Insurance Company of the State of Pennsylvania, and any and all of its officers, servants, agents or employees, from any and all actions, causes of action, obligations, costs, damages, losses, claims, liabilities and demands of whatsoever character, including but without limiting the generality of the foregoing provisions, any and all causes of actions or claims arising or which may arise in the future out of the acts, omissions and/or conduct of ROBERT CALLAHAN, JOHN A. CALLAHAN and BRUCE CLAYPOOL t/a THE LIBRARY, INC. and their officers, servants, agents or employees, in any way connected with, mentioned, suggested or which may arise in the future from the incident alleged in an action pending in the United States District Court for the District of New Jersey, Civil Action Number 83-2955, entitled PINTO V. CALLAHAN AND THE LIBRARY, INC.

In consideration of the release set forth above, St. Paul Insurance Company, on behalf of the defendants, hereby agrees to pay the following sums in the following manner:

(1) A lump sum payment of $600,000.00 to be paid on or before August 31, 1984;

(2) Further lump sum payments to be paid on the following dates and in the following amounts:

| | | |
|---|---|---|
| On or before 7/31/85 | lump sum payment | $ 50,000. |
| On or before 7/31/90 | lump sum payment | 200,000. |
| On or before 7/31/95 | lump sum payment | 200,000. |
| On or before 7/31/00 | lump sum payment | 400,000. |
| On or before 7/31/04 | lump sum payment | 500,000. |
| On or before 7/31/09 | lump sum payment | 500,000. |
| On or before 7/31/14 | lump sum payment | 750,000. |
| On or before 7/31/19 | lump sum payment | 1,000,000. |
| On or before 7/31/24 | lump sum payment | 1,000,000. |
| On or before 7/31/29 | lump sum payment | 1,000,000. |

GREENBLATT, GREENBLATT & REILLY SUPPORT · A PROFESSIONAL CORPORATION
200 HADDONFIELD · P.O. BOX 637 · WOODBURY, NEW JERSEY

1

Case ID: 220901652

GREENBLATT, GREENBLATT & MIESENHOLDER, A PROFESSIONAL CORPORATION
200 NORTH EIGHTH STREET, P.O. BOX 283 • VINELAND, NEW JERSEY 08360

2

(3) Monthly payments as follows:

$ 2,000 per month for sixty (60) months beginning on or before 8/31/84
$ 2,500 per month for sixty (60) months beginning on or before 8/31/89
$ 3,000 per month for sixty (60) months beginning on or before 8/31/94
$ 3,500 per month for sixty (60) months beginning on or before 8/31/99
$ 4,000 per month for sixty (60) months beginning on or before 8/31/04
$ 5,000 per month for sixty (60) months beginning on or before 8/31/09
$ 7,000 per month for sixty (60) months beginning on or before 8/31/14
$12,000 per month for sixty (60) months beginning on or before 8/31/19
$15,000 per month for sixty (60) months beginning on or before 8/31/24

All payments to be made pursuant to the provisions of this agreement
are guaranteed and not dependent upon survival of Rose Pinto and remain
the obligation of St. Paul Insurance Company, Inc., and any payments to be
made after the death of Rose Pinto shall be made to the Estate of Rose
Pinto.

St. Paul Insurance Company, Inc. shall at all times remain directly
responsible for all sums and obligations contained in this agreement, ex-
cept as may otherwise be provided herein and may for its own convenience,
fund its obligation to make said payments under the terms of this agree-
ment through the purchase of a financial vehicle including but not
limited to an annuity policy from Executive Life Insurance Company of New
York. Payments made pursuant to said annuity contract shall operate as a
pro tanto discharge of the scheduled obligations set forth herein. For it
own convenience, St. Paul Insurance Company, Inc. shall have the annuity
carrier mail payments directly to the plaintiff. In the event that St.
Paul Insurance Company, Inc. purchases an annuity policy or other
financial vehicle to fund its obligation hereunder, it shall further furnish to
Plaintiff's attorneys, Greenblatt, Greenblatt & Miesenholder, P.A. a
certified, true and correct copy of such annuity contract or other docu-
ment with further evidence that said contract or other funding vehicle
has been fully paid for and is being paid by St. Paul Insurance Company,
Inc. as owner, subject to St. Paul Insurance Company, Inc.'s obligation to
ensure said payment to Rose Pinto pursuant to the terms of this agreement.



Neither plaintiff nor anyone acting on her behalf shall have any right of ownership whatsoever in the annuity contact, shall have no right to designate a beneficiary, shall have no right to accelerate or defer payments under the annuity contract nor increase or decrease any payments under the annuity contract nor any other right of control under the annuity contract, which contract shall be owned exclusively by St. Paul Insurance Company, Inc. It is understood and agreed that plaintiff's rights to said annuity shall be no greater than those of a general creditor of the owner of said contract.

It is understood and agreed by and between the parties hereto that St. Paul Insurance Company, Inc. may, as a matter of right and in its sole discretion, assign its duties and obligations to make such future payments to First Executive Corporation pursuant to an agreement in the sample form attached hereto as Exhibit A. Such assignment, if made, is hereby accepted by Rose Pinto without right of rejection and in full discharge and release of the duties and obligations of St. Paul Insurance Company, Inc.

The parties hereto expressly understand and agree that if an assignment of its duties and obligations to make such future payments is made by St. Paul Insurance Company, Inc. to First Executive Corporation pursuant to this agreement, all of the duties and responsibilities otherwise imposed upon St. Paul Insurance Company, Inc. by this agreement with respect to such future payments shall instead be binding solely upon First Executive Corporation.

~~Notwithstanding any other provision of this agreement, St. Paul Insurance Company, Inc. shall at all times remain directly responsible for the payment of all sums and obligations contained in this agreement unless a qualified assignment is made in accordance with this agreement in which event St. Paul Insurance Company, Inc. shall remain liable for all sums and obligations not so assigned.~~

YLK

IP

It is understood and agreed that this agreement represents the settlement and the release of disputed claims and that the payment of any sum of money, the making of any undertaking contained herein and the acceptance of this agreement shall not constitute or be construed as an admission of any liability whatsoever by defendants Callahan and/or Bruce Claypool t/a the Library, Inc.

It is further understood and agreed that this release extends to all claims of every nature and kind whatsoever known, suspected or unsuspected.

Rose Pinto further expressly agrees that this release shall be binding upon her heirs, administrators and assigns and shall inure to the benefit of the defendants, Callahan and Bruce Claypool, t/a the Library, Inc.

Rose Pinto further expressly warrants and represents to all parties to this agreement as part of the consideration of the above mentioned sum of money and undertakings by these parties that before executing this instrument she fully informed herself of its terms, contents, conditions and effects; that in making this settlement she has had the benefit and advice of doctors or her own choosing, that no promise or representation of any kind has been made to her by the parties released or by anyone acting for them, except as is expressly stated in this instrument, that she has relied solely and completely upon her own judgment and the advice of counsel in making this settlement, and that the consideration for which it is a fully complete and final release, the consideration for which is the payment of the sum set forth above.

Executed this 3rd day of August, 1985.

_____ (SEAL)
ROSE PINTO

ST. PAUL FIRE AND MARINE INSURANCE
COMPANY
BY: William M. Hamilton, Claim Supervisor (SEAL)

COMMONWEALTH OF PENNSYLVANIA, COUNTY OF DELEWARE, SS.:
I CERTIFY that on _Aug 3_ , 19_84_
_Rose Pearo_ personally came before me and
acknowledged under oath, to my satisfaction, that this person:
(a) is named in and personally signed this document, and
(b) signed, sealed and delivered this document and his or her act
and deed.

HARRIET T. GOSSIN, Notary Public
Ridley Twp., Delaware Co.
My Commission Expires Dec. 15, 19

STATE OF NEW JERSEY , COUNTY OF _Middlesex_ SS.:
I CERTIFY that on _Sept 13_ , 1984
_William M. Howitt_ personally came before me this person
acknowledged under oath, to my satisfaction, that:
(a) this person is the claims supervisor of
the corporation named in this document,
(b) this person is the attesting witness to the signing of this
document by the proper corporate officer who is authorized to act on
behalf of the corporation President of the corporation,
XXXXXXXXXXXXXXXXXXXXXXXXsigned and delivered by the corporation as
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXX
(c) this person signed this proof to attest to the truth of these
facts.

Signed and sworn to before me on
_Sept 13_ , 1984

JOHN F. GIBBONS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Aug. 2, 1988

GREENBLATT, GREENBLATT & ROSENBURGER - A PROFESSIONAL CORPORATION
700 NORTH EIGHTH STREET - P. O. BOX 882 - VINELAND, NEW JERSEY 08360

Case ID: 220901652

REC...
EXECUT...
CO OF ...
ASSIGNMENT
SEP 27  10 47 ...

1.  In consideration of the tendering of a lump sum premium payment

by __St. Paul Fire and Marine Insurance Co__, a ___Minnesota___ corporation ("Assignor")

to First Executive Corporation, a Delaware corporation ("Assignee"),

Assignee assumes, and Assignor assigns to Assignee, the liability of

Assignor to make periodic payments in the amounts and at the times set

forth in the Schedule of Payments attached as Exhibit A to Payee (or, in

the event of Payee's death, to __Estate of Rose Pinto__) as damages on account

of personal injury or sickness.  Payee agrees that, by reason of such

assumption and assignment, Assignor is fully released from its liability

to make all periodic payments.  Assignee does not assume and Assignor does

not assign any obligation or liability except the liability to make

periodic payments pursuant to a [judgement/settlement agreement] dated

_____ 19 ___, a copy of which is attached as Exhibit B.

Assignor, Assignee and Payee agree that payments made to Payee, shall, to

the extent of such payments, discharge Assignee's obligation to make the

payments set forth in Exhibit A.  This Agreement ("Agreement") is intended

to constitute a qualified assignment within the meaning of Section 130(c)

of the Internal Revenue Code.

2.  Assignee agrees to make payments as per the attached Schedule of

Payments known as Exhibit A.  In addition, Payee may not accelerate,

defer, increase, or decrease any payment set forth in Exhibit A except by

the express permission of the Assignee.

3.  Payee shall not have, by reason of this Agreement, any right

against Assignee other than the rights of a general creditor of Assignee.

This Agreement does not give Payee any lien, security interest, or other

Assignment

Page Two

right in any asset of Assignee, or any asset held or acquired by Assignee in order to fund the obligation to make the payment set forth in Exhibit A.

4. Assignee's obligation to make payments shall not be greater than Assignor's obligation to make such payments. To the extent that Assignor's obligation to make any payment (or any portion thereof) is invalid, unenforceable, or subject to any defense, Assignee's obligation shall be equally invalid, unenforceable, or subject to such defense.

5. Assignor represents and warrants to Assignee that (i) Assignor incurred the liability to make the periodic payments as noted in the schedule attached, and (ii) such payments constitute damages on account of personal injury or sickness within the meaning of Sections 104 (1) (2) and 130 (c) of the Internal Revenue Code.

6. Each Party of this Agreement represents and warrants that it has the power and authority to enter into and perform this Agreement.

7. This Agreement constitutes the entire agreement among Assignor, Assignee and Payee.

8. This Agreement shall be governed by the laws of the state of New York.

ENTERED into as of the ___27th___ day ___July___ 19 84 .

St. Paul Fire and Marine Insurance Co.

[NAME OF ASSIGNOR]

By: _William Hamilton_
William Hamilton
Title: ___Supervisor___

FIRST EXECUTIVE CORPORATION

By: _Hays F. Taylor_
Title: _Ass't Secretary_

[Name of Payee]

Case ID: 220901652

# Single Premium Annuity Certain. Nonparticipating.

ANNUITANT   ROSE PINTO

INCOME PAYMENTS   SEE BENEFITS SCHEDULE

INCOME PAYMENT DATES   SEE BENEFITS SCHEDULE

PAYMENTS CERTAIN   609

CONTRACT NUMBER   ▮▮▮▮

EXECUTIVE LIFE INSURANCE COMPANY OF NEW YORK, hereinafter called the Company, will pay the Income Payments shown on Page 3 to the Payee on the Income Payment Dates, beginning on the First Payment Date, and continuing until the Payments Certain have been made.

## Thirty Day Right To Cancel Contract

Within 30 days after this contract is first received, it may be cancelled for any reason by returning it to the agent through whom it was purchased or to the Company's Home Office. The return of this contract will void it from the beginning. The Company will refund all payments made for this contract within ten days after it receives notice of cancellation and the returned contract.

SIGNED for the Company at its Home Office on the Date of Issue.

*Ronald McDonnelly*

PRESIDENT

*Cheryl Nada*

SECRETARY

## Executive Life

EXECUTIVE LIFE INSURANCE COMPANY OF NEW YORK
390 NORTH BROADWAY

ANNUITANT     ROSE PINTO

INCOME BENEFITS     SEE BENEFITS SCHEDULE

INCOME PAYMENT DATES     SEE BENEFITS SCHEDULE

PAYMENTS CERTAIN     409

CONTRACT NUMBER     ▮▮▮▮▮▮

SINGLE PREMIUM     $1,00 + OTHER VALUABLE
CONSIDERATION

DATE OF ISSUE     JULY 26, 1984

FIRST PAYMENT DATE     AUGUST 26, 1984

```
***************************************     OWNER          THE ANNUITANT,UNLESS
     ***BENEFITS SCHEDULE***                                OTHERWISE NAMED IN
***************************************                     THE APPLICATION OR
000.00 MONTHLY 8/26/1984 - 7/26/1989                       CHANGED AS PROVIDED
000.00 MONTHLY 8/26/1989 - 7/26/1994                       IN THE CONTRACT
500.00 MONTHLY 8/26/1994 - 7/26/1999
000.00 MONTHLY 8/26/1999 - 7/26/2004     BENEFICIARY        AS NAMED IN THE
000.00 MONTHLY 8/26/2004 - 7/26/2009                        APPLICATION, OR
000.00 MONTHLY 8/26/2009 - 7/26/2014                        CHANGED AS PROVIDED
000.00 MONTHLY 8/26/2014 - 7/26/2019                        IN THE CONTRACT
000.00 MONTHLY 8/26/2019 - 7/26/2024
2000.00 MONTHLY 8/26/2024 - 7/26/2029     PAYEE             THE ANNUITANT, UNLESS
5000.00 MONTHLY 8/26/2029 - 7/26/2034                       OTHERWISE NAMED IN THE
                                                            APPLICATION OR CHANGED
***************************************                     AS PROVIDED IN THE
 $50,000.00 PAYABLE ON JULY 26 1989                         CONTRACT
 $100,000.00 PAYABLE ON JULY 26 1994
 $200,000.00 PAYABLE ON JULY 26 1999
 $400,000.00 PAYABLE ON JULY 26 2004
 $500,000.00 PAYABLE ON JULY 26 2009
 $600,000.00 PAYABLE ON JULY 26 2014
 $750,000.00 PAYABLE ON JULY 26 2019
1,000,000.00 PAYABLE ON JULY 26 2024
1,000,000.00 PAYABLE ON JULY 26 2029
***************************************
```



680-12/82                          PAGE 3

Schedule "A"     (SCHEDULE OF PAYMENTS)     Rose T. Pinto
                                            Annuity Application

$  2,000 Per month guaranteed for 60 months commencing   1 month  after issue
$  3,000 Per month guaranteed for 60 months commencing  61 months after issue
$  3,500 Per month guaranteed for 60 months commencing 121 months after issue
$  4,000 Per month guaranteed for 60 months commencing 181 months after issue
$  5,000 Per month guaranteed for 60 months commencing 241 months after issue
$  6,000 Per month guaranteed for 60 months commencing 301 months after issue
$  7,000 Per month guaranteed for 60 months commencing 361 months after issue
$  9,000 Per month guaranteed for 60 months commencing 421 months after issue
$ 12,000 Per month guaranteed for 60 months commencing 481 months after issue
$ 15,000 Per month guaranteed for 60 months commencing 541 months after issue

$    50,000 Guaranteed lump sum payment to be paid  5 years after issue
$   100,000 Guaranteed lump sum payment to be paid 10 years after issue
$   200,000 Guaranteed lump sum payment to be paid 15 years after issue
$   400,000 Guaranteed lump sum payment to be paid 20 years after issue
$   500,000 Guaranteed lump sum payment to be paid 25 years after issue
$   600,000 Guaranteed lump sum payment to be paid 30 years after issue
$   750,000 Guaranteed lump sum payment to be paid 35 years after issue
$ 1,000,000 Guaranteed lump sum payment to be paid 40 years after issue
$ 1,000,000 Guaranteed lump sum payment to be paid 45 years after issue

END OF SCHEDULE

## APPLICATION FOR AN IMMEDIATE ANNUITY



Executive Life Insurance Company
of New York
P.O. Box 60, 390 N. Broadway
Jericho, New York 11753

544246

| ANNUITANT | JOINT ANNUITANT, if any |
|---|---|
| **1.** Rose      T.      Pinto<br>FIRST NAME   INITIAL   LAST NAME | **6.**<br>FIRST NAME   INITIAL   LAST NAME |
| **2.** ☐ Male<br>☒ Female | **3. DATE OF BIRTH** ▮▮▮▮▮<br>PROOF OF AGE must be submitted with the application. | **7.** ☐ Male<br>☐ Female | **8. DATE OF BIRTH**<br>MONTH____DAY____YEAR____<br>PROOF OF AGE must be submitted with the application. |
| **4. SOCIAL SECURITY NO.** ▮▮▮▮▮ | **9. SOCIAL SECURITY NO.** |
| **5. ADDRESS** (Include zip code)<br><br>450 South Avenue<br>Holmes, PA 19042 | **10. ADDRESS**   ☐ Same as in 5 or: |

| OWNERSHIP | |
|---|---|
| **11. OWNER IF OTHER THAN ANNUITANT**<br><br>St. Paul Insurance Company, Inc. | **12. ADDRESS** (Include zip code)<br><br>P.O. Box 203<br>499 Thornall Street<br>Edison, NJ 08837 |
| **13. SOCIAL SECURITY OR TAXPAYER I.D. NO.**<br>▮▮▮▮▮ | **14. RELATIONSHIP TO ANNUITANT** |
| **15. CONTINGENT OWNER** — Answer only if (a) One person is owner in question 11; or (b) in a joint and survivor plan, one of the annuitants is sole owner. | **16. RELATIONSHIP TO OWNER** |

| PERSON(S) TO RECEIVE ANNUITY PAYMENTS | |
|---|---|
| **17. PAYEE** (subject to change) for annuity payments before death of annuitant (and surviving annuitant if any) - or, if plan is annuity certain, for annuity payments during term of annuity. | ☒ Annuitant or then surviving annuitant if any<br>☐ Both annuitants jointly   ☐ Owner<br>☐ Other |

**18. BENEFICIARY** (subject to change) for any payments payable after death of annuitant (and surviving annuitant if any). Does not apply if plan is for annuity with no payments on or after death. First name, initial, last name.

PRIMARY   Estate of Annuitant     **19. RELATIONSHIP TO ANNUITANT**

CONTINGENT

| REPLACEMENT | |
|---|---|
| **20.** Is this annuity to replace or will it cause a change in any insurance or annuity on the annuitant's life or owned by the owner?   ☐ YES  ☒ NO<br><br>If yes, state company and plan: | |

| DETAILS OF POLICY (All plans are NONPARTICIPATING) |
| --- |

**21.**
☐ LIFE ANNUITY (one life)
with _____ years certain

☐ INSTALLMENT REFUND   ☐ CASH REFUND

☒ ANNUITY CERTAIN payable for 50 years
and _____ months

☐ JOINT AND SURVIVOR ANNUITY with
_____ years certain, and
_____ % to Annuitant if Joint Annuitant dies first;
_____ % to Joint Annuitant if Annuitant dies first

☒ Lump Sum Payments of   see schedule "A"
attached
$ _____ at end of year _____
$ _____ at end of year _____
$ _____ at end of year _____
$ _____ at end of year _____
$ _____ at end of year _____
$ _____ at end of year _____

**23.**   see schedule
AMOUNT OF EACH ANNUITY PAYMENT $ "A" attach
increasing each year at _____ % compound interest
Payable every:   ☒ Month   ☐ 3 Months
☐ 6 Months   ☐ Year

Starting: _____ Month _____ Day _____ Year _____
(At least a month after premium payment)
one month from receipt of premium

**24.** Complete this section if this Application is being applied
for under a qualified retirement plan.

☐ IRA (complete Form 3015   ☐ TSA
required)
☐ KEOGH (complete Form 3016   ☐ Pension Trust
required)

**22.**
SINGLE PREMIUM:   $ 495,968.48

**25. SPECIAL REQUESTS**
see payout schedule "A" attached

**26.** To the best of our knowledge and belief, we, the undersigned, declare that the statements and answers given in this application are true, complete and correctly recorded. They are made with the intent that the Company can rely on them.

We agree that: (1) This application is the basis for any contract issued because of it; (2) no soliciting agent has the authority to waive the answers to any question, or modify this application; or to bind the Company by making promises or representations, or by giving or receiving any information; (3) no

information acquired by any representative of the Company will be imputed to it unless set out in writing in this application; (4) the Company will only be responsible for a waiver or change of this application when it is in writing and signed by its President or Secretary; (5) unless otherwise requested, the owner of the contract applied for will be the Annuitant; (6) no commutation of payment due the beneficiary will be allowed unless specifically provided by endorsement on any Contract by the Company prior to the death of the Annuitant.

Signed (in the manner in
which checks are to be drawn) at ___ Springfield, NJ ___ this 24th day of July ___ 19 84

x _____   x _____   x _____
WITNESS (SOLICITING AGENT)   ANNUITANT   JOINT ANNUITANT

Owner, if other than annuitant,
is to sign also.   x St. Paul Fire & Marine Ins Co, William M.
OWNER   Hamilton, Clm Supr.

**27. AGENT** (please print)
Richard G. Halpern
NAME
Richard G. Halpern Assoc., Inc.
FIRM
505 Morris Avenue
BRANCH ADDRESS
Springfield, NJ 07081
CITY, STATE, ZIP

_____
SIGNATURE OF AGENT

Code No. ___

# ABSOLUTE ASSIGNMENT

RECEIVED EXECUTIVE ... CO. OF NEW ... SEP 27 10 ... '84

KNOW ALL MEN BY THESE PRESENTS:

THE UNDERSIGNED, *for value received, hereby assigns, transfers, and sets over to

First Executive Corporation

whose address is 977 Wilshire Blvd., Beverly Hills, California, 90212

**(a corporation organized under the laws of California, its successors or assigns)

contract number [redacted] issued by the Executive Life Insurance Company of New York, New York, N.Y.,

on the life of Rose T. Pinto

and all renewals thereof, and any additions, and any dividends deposited at interest, and any premium deposits that may now exist in connection with said contract (excepting only any right to receive any refund under a premium deposit agreement of which the assignor is not the sole beneficiary), together with all right, title and interest of the undersigned therein. Said assignee is hereby authorized and empowered to do and perform every act and thing necessary, convenient, or desirable to fully exercise and enjoy every right, privilege, benefit, and advantage hereby transferred and the specific mention herein of any right or privilege shall not exclude other rights or privileges generally referred to or reasonably implied herein.

Executed in duplicate at Iselin, New Jersey this 27th day of July, 19 84

In presence of
John F. Gibbons
JOHN F. GIBBONS
Address NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Aug. 8, 1985

William Hamilton
William Hamilton, Claims Supervisor
St. Paul Fire and Marine Insurance Company

NOTE: 1. *If transfer is intended as a gift, delete "for value received" and insert "for love and affection." Assignor must initial alteration.

2. **If assignee is a corporation, give state of incorporation.

3. If assignee is a trust, certified copy of trust, or excerpts relating to insurance, must be submitted.

4. If assignor is a corporation, the corporate seal must be affixed and copy of the resolution by board of directors certified by the secretary or clerk, authorizing the assignment and designating the person to execute it on behalf of the corporation, should be attached.

5. If assignor is a partnership, any duly authorized partner other than Insured and/or assignee, may execute the assignment, on behalf of the partnership.

6. Only an individual who is of legal age can properly execute an assignment.

Received and duplicate filed this day of , 19 , assuming, however, no responsibility as to its validity or effect.

EXECUTIVE LIFE INSURANCE COMPANY OF NEW YORK, NEW YORK, N.Y.

Hayes T. Taylor
Registrar

Ronald McDonnelly
PRESIDENT

Form 13.5
AVON 9/133

Case ID: 220901652